# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROSIE WASHINGTON AND SHELDON WASHINGTON | CIVIL ACTION |
| | NUMBER 11-334-BAJ-DLD |
| VERSUS | |
| STATE OF LOUISIANA, ET AL. | |

## MAGISTRATE JUDGE'S REPORT

This race-based employment discrimination and retaliation matter is before the court on defendants' motion to dismiss (rec. doc. 25) and supplemental motion to dismiss (rec. doc. 36)[1], which are opposed (rec. docs. 31 and 46) and plaintiffs' motion to strike reply brief (rec. doc. 53)[2], which is opposed (rec. doc. 54), all of which have been referred to the undersigned for a report and recommendation.[3]

### Factual Background

Plaintiff Rosie Washington is a licensed practical nurse who was employed by defendant Louisiana State Penitentiary, a state facility, from 1993 to February 1997 and

---

[1] The motions to dismiss are brought by the State, LSP, DOC, and individual defendants Cain, Dubroc, Falgout, Hardin, Dodd, Barr, and Jett.

[2] Plaintiffs' motion to strike reply brief (rec. doc. 53) seeks to strike defendants' reply memorandum in support of their motions to dismiss because plaintiffs objected to defendants' arguments that all claims should be dismissed based on the law as applied to defendants' interpretation of the facts as alleged by plaintiffs. Defendants had the court's permission to file the reply brief prior to filing the brief, and both parties were given ample opportunity to present their positions and argue the law as applied to the facts. Plaintiffs' motion is therefore denied.

[3] Defendants' motions to dismiss address the allegations in plaintiffs' original and amended complaint (rec. doc. 25-1, p. 4). After the motion to dismiss was filed, plaintiffs filed a motion for leave to file a second amended complaint that added new parties and allegations, including new allegations of wrongful termination. After considering defendants' objection to plaintiffs' motion for leave to file second amended complaint, the motion for leave was granted and the second amended complaint was filed (rec. doc. 60). The report and recommendation takes into consideration the allegations made in the second amended complaint.

again from December, 1999 to December 9, 2011.[4]  Plaintiff brought suit against

defendants State of Louisiana (State), Department of Public Safety & Corrections (DOC),

Louisiana State Penitentiary (LSP), Burl Cain, Mary Annette Dubroc, Stayce Rodriguez

Menzina-Falgout, Gwen Hardin, Jennifer Lemoine[5], L. Bruce Dodd, Donald Barr, Ronald

Jett, Clarion Bay, Sharon Dunbar, and Linda Bordelon alleging that while she was

employed at LSP, she was subject to race-based discrimination, retaliation, and a hostile

work environment (rec. docs. 11 and 60).[6]  Plaintiff[7] alleges that her supervisors have

discriminated against her based on her race since 2008 when she refused to switch from

the night shift to the day shift to accommodate a white couple who wished to work together

by, among other things, denying her requests for leave, while freely granting leave to

---

[4]Plaintiff received a notice dated December 9, 2011, on December 12, 2011, which proposed to separate her from employment with the State; however, such separation was not effective until January 16, 2012, and plaintiff was placed on leave without pay beginning December 10, 2011.

[5]  Defendants Lemoine, Bay, Dunbar, and Bordelon have not been served with the amended complaints. Defendants Lemoine and Bay were named as defendants in the First Amended and Supplemental Complaint, which was filed on September 7, 2011 (rec. doc. 11).  Pursuant to Fed. R. Civ. P. 4(m), the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings.  Plaintiffs have failed to serve Lemoine and Bay within 120 day of commencement of this action, therefore, it is appropriate that plaintiffs' claims asserted against defendants Lemoine and Bay be dismissed, without prejudice.  Defendants Dunbar and Bordelon were recently named in plaintiffs' Third Amended and Supplemental Complaint in July 2012.

[6] The complaint describes the individually named defendants as follows: Burl Cain, warden of LSP and an employee and resident of the State of Louisiana; Mary Anne Dubroc, Registered Nurse, an employee of LSP and a resident of the State of Louisiana; Stayce Rodriguez Menzina-Falgout, Registered Nurse, an employee of LSP and a resident of the State of Louisiana; Gwen Hardin, Registered Nurse, an employee of LSP and a resident of the State of Louisiana; Jennifer Lemoine, a Licensed Practical Nurse, an employee of LSP and a resident of the State of Louisiana; L. Bruce Dodd, Assistant Warden, an employee and resident of the State of Louisiana; Donald Barr, Assistant Warden, and employee and resident of the State of Louisiana; Ronald Jett, a former Deputy Warden, and a former employee and resident of the State of Louisiana; Clarion Bay, an inmate incarcerated at Louisiana State Penitentiary, Sharon Dunbar, Director of Nursing, an employee and resident of the State of Louisiana; Linda Bordelon, an employee and resident of the State of Louisiana (rec. docs. 11 and 60).

[7] The majority of the allegations in the complaint are made by plaintiff Rosie Washington, so the court will refer to plaintiff as Rosie Washington unless otherwise stated.

similarly situated white nurses; involuntarily changing her work schedule from the night shift to the day shift, while not changing the work schedule of white night shift workers; placing her on "enforced leave" and docking her pay in response to a pending investigation regarding her conduct at work, while allowing her white coworkers involved in the matter to remain at work; giving her low performance ratings that resulted in the denial of her merit increase; intentionally deducting excessive leave hours in connection with the time she was absent from work while recovering from a workplace injury; and ultimately terminating her from employment due to her race. Plaintiff further alleges that her supervisors engaged in these acts in retaliation for filing internal grievances, appeals to the Louisiana Civil Service Commission, charges with the Equal Employment Opportunity Commission, and previous lawsuits against the same defendants alleging discriminatory and retaliatory conduct based on race.[8] Finally, plaintiff alleges that the treatment she received from her supervisors created a hostile work environment that caused her damages.

Plaintiff brings claims against defendants in their individual and official capacities for declaratory and injunctive relief and damages under 42 U.S.C. §2000(e), et seq.; §1981 and the Fourteenth Amendment; §1983 and §1985 and the First, Fifth, Seventh, and Thirteenth Amendments to the Constitution of the United States; independent claims under the First, Fifth, Seventh, Tenth, and Thirteenth Amendments to the Constitution of the

---

[8] It appears that plaintiffs have filed two previous suits alleging claims of discrimination and retaliation based on race. The first suit was filed in the 19th Judicial District Court, State of Louisiana and the second was filed in the 20th Judicial District Court, State of Louisiana (rec. doc. 53-1). The 20th Judicial District apparently held that the claims alleged in that suit were the same as those alleged in the suit pending in the 19th Judicial District Court, and the suit pending in the 20th Judicial District Court was dismissed based on lis pendens. The suit pending in the 19th Judicial District was removed to the United States District Court for the Middle District, Washington, et al v. State of Louisiana, et al, (CA 10-261-JJB-CN), and was later dismissed for failure to state a claim under Title VII. Id.

United States; and for damages for injuries and violations arising from the rights secured to plaintiffs by Articles I, Sections 2, 3, 4, 7, 12, 22 of the Constitution of the State of Louisiana and Louisiana Civil Code articles 2315 and 2320 (rec. doc. 11).[9]  Plaintiff Rosie Washington's husband, Sheldon Washington, seeks damages sustained for watching his wife suffer the alleged wrongdoings by defendants.

### Standard on Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a plaintiff's pleading to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), citing  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A plaintiff's failure to satisfy the pleading requirements of Rule 8 may be challenged by a Rule 12(b)(6)  motion to dismiss for failure to state a claim upon which relief may be granted.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted."

---

[9] Specifically, plaintiff asserts the following causes of action in the amended complaint: Violation of 42 U.S.C. 2000e, et seq. (Title VII); Violation of 42 U.S.C. 1981 and the Fourteenth Amendment; Violation of 42 U.S.C. 1983 by violating rights under the First, Fifth, Seventh, Thirteenth Amendments; Violation of 42 U.S.C. 1985 by violating rights under the First, Fifth, Seventh, Thirteenth Amendments of the United States Constitution; Violation of First and Fourteenth Amendments; Violation of Fifth and Fourteenth Amendments; Violation of Seventh and Fourteenth Amendments; Violation of Thirteenth and Fourteenth Amendment; Violation of the Tenth and Fourteenth Amendment; Violation of Article I, section 2 of Louisiana Constitution; Violation of Article I, section 3 of Louisiana Constitution; Violation of Article 1, section 4 of Louisiana Constitution; Violation of Article I, section 7 of Louisiana Constitution; Violation of Article I, section 12 of Louisiana Constitution; Violation of Article 1, section 22 of Louisiana Constitution, Violation of La. Civ. Code art. 2315; Violation of La. Civ. Code Art. 2320 (rec. doc. 60).

Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2997), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. V. Twombly*, supra.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, supra.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n] - that the pleader is entitled to relief.'" Id.

### Discussion

Plaintiff's complaint alleges violations of the United States Constitution, federal civil rights laws, the Louisiana Constitution, and the Louisiana Civil Code arising from her treatment by her employer and coworkers during her employment at LSP and during administrative hearings concerning disciplinary actions taken by her employer while she was employed by LSP.  Defendants' motion to dismiss raises numerous defenses to plaintiff's claims, each of which will be address individually.

I.      Eleventh Amendment Immunity

Defendants first contend that all of plaintiff's claims against the State, LSP, DOC, and the individual defendants in their official capacities, with the exception of her Title VII claims, are barred by virtue of the Eleventh Amendment to the United States Constitution (rec. doc. 25-1).   Plaintiff responds by arguing that the state and state defendants have waived their Eleventh Amendment immunity defense by removing plaintiff's previously filed action alleging similar claims from the 19th Judicial District Court to this court (rec. doc. 46-1).   The cases cited by plaintiff do not support plaintiff's argument that waiver of the Eleventh Amendment immunity in one case can be imputed to the same defendants in a separate case. See *Lapides v. Board of Regents of the University System of Ga*., et al., 535 U.S. 613, 122 S.Ct.1640, 152 L.Ed.2d 806 (2002)(cited by plaintiffs). Moreover, defendants have done nothing that would result in waiver of their Eleventh Amendment immunity in this case.

The Eleventh Amendment to the United States Constitution bars all suits, whether for injunctive, declaratory, or monetary relief, against a non-consenting state and its departments by citizens of another state, foreigners, or its own citizens. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).  The Eleventh Amendment likewise bars the adjudication of pendant state law claims against non-consenting state defendants in federal court. See *Pennhurst*, supra.   Congress has the power to abrogate this immunity and, although it has not done so with respect to the

Section 1981, 1983, and 1985 claims alleged by plaintiff[10], it has done so with respect to plaintiff's claims under Title VII. See *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 279, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (*citing Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 n. 1 (5th Cir.2002) (finding that the Fifth Circuit has "long recognized that Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII"). Thus, all of plaintiff's claims against the State are barred by the Eleventh Amendment, with the exception of their claims under Title VII.

The Eleventh Amendment shield of immunity extends to certain state agencies. See *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183 (5th Cir. 1986). The Fifth Circuit has previously applied Eleventh Amendment immunity to both the Department of Public Safety and Corrections and the LSP, as agencies of the state. See *Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 313-314 (5th Cir. 1999)(specifically applying Eleventh Amendment immunity to Section 1985 claims against DPSC); *Benoit v. Louisiana State Penitentiary,* No. 09-715, 2010 WL 1087945, at *1 (M.D. La. March 19, 2010)(applying Eleventh Amendment immunity to the LSP); *Walker v. Stewart*, No. 08-324, 2009 WL 111646, *2 (M.D. La. Jan. 15, 2009)(applying Eleventh Amendment immunity to the DPSC and "to the institutions that it maintains"). Thus, plaintiff's claims against DOC and LSP are barred by the Eleventh Amendment, with the exception of their Title VII claims.

---

[10] "Section 1983 does not, explicitly or by its clear language, indicate on its face an intent to abrogate the immunity of the states." *Walker v. Livingston,* 381 Fed.Appx. 477, 478 (5th Cir.2010) (citing Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Similarly, the Fifth Circuit has found that Congress has not abrogated the states' immunity for suits under Section 1981 and 1985. See *Hines v. Mississippi Dep't of Corrections*, 239 F.3d 366 (5th Cir.2000); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir.1981).

Finally, the Eleventh Amendment also bars claims for damages against state officials acting in their official capacities as agents of the state. <u>See</u> *Monell v. New York City Dept. of Soc.* Svcs., 436 U.S. 658, 690, fn 55, 98 S.Ct. 2018 (1978); *Pennhurst*, 465 U.S. 89, at 101-102. Thus, plaintiff's claims for monetary relief against the individual defendants in their official capacities would also be barred. However, an exception to immunity exists for suits seeking prospective injunctive relief against state employees in their official capacities under the *Ex Parte Young* doctrine. Under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the exception applies only if a suit alleging violations of federal law is "brought against individual persons in their official capacities as agents of the state, and the relief sought [is] declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir.1998).

Plaintiff seeks "... injunctive relief against the defendants for the acts and omissions which are occurring and are likely to occur in the future" (rec. doc. 60, p. 88). Thus, based on the allegations in the complaint, plaintiff's request for injunctive relief seeks to enjoin discriminatory or retaliatory acts or other acts by plaintiff Rosie Washington's supervisors creating a hostile work environment. Plaintiff Rosie Washington was terminated from her employment on January 16, 2012 (rec.doc. 61, pg. 53); therefore, there is no basis for future injunctive relief against the individual defendants in their official capacities, and the *Ex Parte Young* doctrine is not applicable. As a result, the Eleventh Amendment immunity bars plaintiff's claims against the individual defendants in their official capacities

In summary, plaintiff's claims for damages and injunctive relief against the State, DOC, LSP and the individually named defendants in their official capacities are barred by the Eleventh Amendment, with the exception of their claims under Title VII. As a result of

the Eleventh Amendment immunity, the only claims remaining against the State, LSP, and DOC and the individual defendants in their official capacities are plaintiff's Title VII claims. All of plaintiff's claims against the individual defendants in their individual capacities remain.

II.　　Title VII

Plaintiffs' complaint specifically alleges claims for discrimination, retaliation, and hostile work environment based on race under 42 U.S.C. §2000e, et seq., Title VII of the Civil Rights Act of 1991 (Title VII) (rec. doc. 60, p. 59). Title VII proscribes certain employment practices, including discrimination, retaliation, and a hostile work[11] environment based on race.

The Fifth Circuit has held that "employers, not individuals acting in their individual capacity, may be held liable under Title VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 651-652 (5th Cir. 1994). "[I]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. National Communications, Inc.*, 339 F.3d 376, 387 (5th Cir. 2003), citing Smith v. Amedisys, Inc., 298 F.3d 434, 448-449 (5th Cir. 2002). Thus, plaintiff Rosie Washington's Title VII claims against the individual defendants should be dismissed. The court, therefore, analyzes whether plaintiff has stated a claim under Title VII for discrimination and retaliation against her employer, the State of Louisiana, LSP, and DOC.[12]

---

[11] Defendants did not move to dismiss plaintiff's claim for hostile work environment because they argue that the complaint does not contain a claim for hostile work environment.

[12] Plaintiff alleges at various place in her complaint that she is employed by the State of Louisiana, the Louisiana State Penitentiary, and the Department of Corrections (rec. doc. 60, p. 2. 23-24, 41). Defendants never address whether one or all of these entities are plaintiff's employer for purposes of Title VII.

a.    Discrimination

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin ..." 42 U.S.C. § 2000e–2(a).[13] Plaintiff must allege facts to support the following elements in order to state a claim for discrimination: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she was discharged or suffered some adverse employment action by the employer; or (4) she was replaced by someone outside of her protected group or was treated less favorably than other similarly situated employees outside of her protected group. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see also *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Defendants argue that plaintiff fails to allege facts to support a *prima facie* case of discrimination by failing to allege facts to support that she has suffered an adverse employment action or that she was treated less favorably than similarly situated employees outside of her protected group (African American)(rec. doc. 25, p. 21).

The court notes that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement that plaintiff must satisfy in order to survive a motion to dismiss, and that there is no heightened pleading standard for employment discrimination suits. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152,

---

[13] Plaintiff also alleges a claim for discrimination based on race under 42 U.S.C. §1981.

-10-

L.Ed.2d 1 (2002).  Plaintiff's complaint alleges that she is a member of a protected group (African American) (rec. doc. 60, p. 13).   There is no indication that plaintiff was not qualified for the nursing position, which she held for 9 years, and defendants do not argue that she was not qualified. (Id., p. 24).

Plaintiff alleges that she was subject to various negative employment actions, including employee violation reports (VR1s) that resulted in a reduction in pay, loss of wages, and dismissal from work; unfavorable changes to work schedule and work assignments that resulted in unfair and oppressive workloads; denial of leave for over a year; denial of access to personnel file; low performance evaluation scores; and ultimately in termination (rec. doc. 60).   Defendants argue that these negative actions of which plaintiffs complain do not constitute "adverse employment actions" as required to state a claim under Title VII (rec. doc. 25-1).   Whether or not an employment action constitutes an "adverse action" is a fact intensive question that is more appropriate for a motion for summary judgment, especially in a case such as this where there are so many facts at issue.[14] Moreover, plaintiffs have amended their complaint to allege that Rosie Washington was wrongfully terminated from employment, which defendants acknowledge is an "adverse action."

Finally, the complaint also includes instances where plaintiff was allegedly treated less favorably than other similarly situated white employees. Plaintiff alleges that in connection with the April 13, 2009, workplace incident between several LSP employees,

---

[14]  The court notes that many of the cases cited by defendants to support their arguments that certain employment actions were not "adverse actions" under Title VII  were decided based on a review of the facts on motions for summary judgment or trials on the merits.

that despite an LSP policy that "all employees involved in an altercation or dispute at the workplace would be subject to the same discipline," plaintiff Rosie Washington (the only African American involved in the incident) was the only employee who was issued a VR1 and placed on administrative leave (rec. doc. 60, p. 15); plaintiff alleges situations where she was denied leave and forced to take "unscheduled leave" due to "lack of nursing staff" and during the same time period, at least two white nurses were granted leave to attend family functions (Id., p. 20, 26); plaintiff generally alleges that the seven named defendants are white members of the B-Line family who grew up in the residential area around the penitentiary and that they have used their power and influence to "prevent fair and equal employment to black employees" (Id., p. 38).

Accepting all of the well-pleaded facts in the complaint as true and viewing them in the light most favorable to plaintiff, the court recommends that the complaint contains allegations sufficient to put defendants on notice of plaintiff's claim of discrimination based on race. Whether or not plaintiff can prove a *prima facie* case of discrimination is an issue for summary judgment.

b.    Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee who opposes any employment practice made unlawful by Title VII. <u>See</u> 42 U.S.C. 2000e-3(a).[15] To make a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) that she engaged in an activity protected by Title VII, (2) her employer took an adverse employment action against her; and (3) that a causal link existed between the protected activity and the

---

[15] Plaintiff also alleges a claim for retaliation under 42 U.S.C. §1981.

adverse action. *McCoy,* 492 F.3d 557; *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

Defendants again argue that plaintiff's complaint fails to allege facts to support actions by defendants that were "materially adverse to a reasonable employee" or that were causally connected to the protected activity (rec. doc. 25, p. 29).  Plaintiff Rosie Washington alleges generally that defendants subjected her to various adverse employment actions, including inequitable scheduling; denial of leave which forced her to take "unscheduled absences" for which she could be penalized; initiating and encouraging rumors that Rosie Washington was hard to work with, violent, and intent on harming others; assigning her an oppressive workload; and termination in retaliation for filing internal grievances with the Louisiana Civil Service Commission, charges with the Equal Employment Opportunity Commission, and previous lawsuits against the defendants alleging racial discrimination and retaliation (rec. doc. 60, pp. 4. 28. 29, 34, 58).

Defendants attempt to dissect each alleged retaliatory event and argue why plaintiff fails to state a claim for retaliation based on the facts associated with each alleged event of retaliation.  As previously stated, plaintiff is not required to prove a *prima facie* case of retaliation at the motion to dismiss stage, but need only allege facts sufficient to put defendants on notice of the claims against them. Plaintiff Rosie Washington alleges that she  engaged in various acts of protected activity, including filing an internal grievance alleging harassment as early as April 16, 2008 (rec. doc. 60, p. 12), charges with the EEOC in 2009 and 2010 (rec. doc. 11,pp. 73-75), and civil actions alleging discrimination and retaliation based on race in December 9, 2009 (CA 10-291-JJB-CN), all of which occurred before plaintiff took the ultimate adverse employment action against her by terminating her

employment in December, 2011 (effective January 16, 2012).  Plaintiff alleges that her employer took various adverse employment actions against her throughout the term of her employment, including terminating her, in retaliation for these protected activities. Thus, the complaint alleges facts sufficient to set forth a claim of retaliation, and defendants' motion to dismiss plaintiff's retaliation claim should be denied.

> III.     Claims under the Civil Rights Act and Qualified Immunity

Plaintiff brings claims against defendants under 42 U.S.C. §1981 based on the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983 and §1985 based on violations of the First, Fifth, Seventh, and Thirteenth Amendments of the United States Constitution, and separate claims for relief under the First, Fifth, Seventh, Tenth, and Thirteenth Amendments of the United States Constitution (rec. doc. 11).  The court has recommended that the Eleventh Amendment bars plaintiff's claims against the State, DOC, and LSP and the individual defendants acting in their official capacities, so plaintiff's claims under Sections 1981, 1983, 1985 and independent violations of the United States Constitution can only proceed, if properly alleged, against the individual defendants in their *individual* capacities.

> Qualified Immunity

Defendants argue that plaintiff's Section 1981, 1983, and 1985 claims are barred by qualified immunity because the individual defendants' conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense.  *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978).

This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038.

Section 1983 and 1985 Claims

Section 1983 creates a private right of action to redress the violation of constitutional rights or federal law by those acting under color of state law. 42 U.S.C. §1983; *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir.1996). Section 1983 is not itself a source of substantive rights, but rather "merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

To prevail on her Section 1983 claim, plaintiff must prove that a person acting under color of state law deprived her of a right secured by the Constitution or the laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49, 119 S.Ct. 977, 143

L.Ed.2d 130 (1999); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir.1984). It is well-settled that under Section 1983, supervisory officials cannot be held vicariously liable for their subordinates' actions. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691-95 (1978). Thus, in order to adequately state a claim under Section 1983 against individual defendants, plaintiff must support her claim with specific facts demonstrating a constitutional deprivation and may not rely on conclusory allegations. *Schultea v. Wood*, 47 F.2d 1427, 1433 (5th Cir.1995). She must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. See *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

To establish liability for conspiracy under Section 1985, plaintiff must establish: 1) a conspiracy; 2) that the purpose of the conspiracy was to deprive a person of equal protection of the laws, or to deprive a person of his privileges and immunities under the laws; 3) that an act was committed in furtherance of the conspiracy; and 4) that an injury occurred as a result. See *Griffin v. Breckenridge*, 403 U.S. 88, 102–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). Similar to a Section 1983 claim, a viable Section 1985 claim requires an underlying violation of constitutional rights or privileges secured elsewhere, or at least, an attempt to do so. See *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983).

Plaintiff's third amended complaint contains 59 pages of detailed, although often confusing, factual allegations before it identifies 23 causes of action (rec. doc. 60). Plaintiff fails to do anything more than to conclude that her constitutional rights were violated under Sections 1983 and 1985 and the First, Fifth, Seventh, Tenth, and Thirteenth Amendments to the United States Constitution. Plaintiff does not identify specific facts previously plead

in the complaint that go to support her claims for constitutional violations; she does not identify against which defendant(s) the claims are alleged; and she does not allege personal participation by the defendant(s) in any violation of her constitutional rights.

In asserting their qualified immunity defense, defendants combed through the complaint to identify facts alleged as to each individual defendant to describe the specific conduct of each individual defendant (rec. doc. 25-1).  Defendants argue that the identified conduct does not amount to a constitutional violation. Id.  Plaintiff does not address the identified conduct, but argues that certain exceptions to qualified immunity under La. R.S. 9:2798.1 are applicable and that defendants are not entitled to qualified immunity because they used governmental resources for private purposes. See *Lugar v. Edmondson Oil, Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Wyatt v. Cole*, 504 U.S. 158 (1992) (rec. doc. 46-1).

Defendants do not raise qualified immunity under La. R.S. 9:2798.1, so the exceptions to that statute are not applicable here.  Additionally, the cases cited by plaintiffs, which involve private parties acting with "state actors" and whether they can be liable under Section 1983 or are eligible for certain immunities, are not applicable to the facts of this case.

Although defendants concentrate their arguments on qualified immunity, the first step of a qualified immunity analysis is whether plaintiff has alleged a constitutional violation, which also goes to whether plaintiff has stated a claim under Section 1983 and

1985.[16]  Accepting plaintiff's allegations as true, which the court must do on a motion to

dismiss, the court finds that plaintiff's allegations do not rise to the level of a constitutional

violation.  Plaintiff's claims therefore must fail as discussed below.

   a.    First Amendment Claims

Plaintiff alleges that defendants violated her First Amendment rights "when she was

unfairly disciplined for private speech occurring between coworkers with regards to

statements she made on December 12, 2008 and April 13, 2009" (rec. doc. 46-1, see also

31, p. 29).  The court cannot identify the December 12, 2008, statements from on the

allegations in the complaint.  The April 13, 2009, statements by plaintiff include alleged

threats and derogatory statements about her co-workers, Mary Annette Dubroc, Stayce

Falgout, the Assistant Director of Nursing (ADON), and Gwen Hardin, Manager. (rec. doc.

60, p. 15).[17]  Plaintiff alleges that she was falsely accused of making the April 13, 2009,

statements, charged with violating the employer's rules in the form of a VR1, and placed

on administrative leave while the charges were investigated, which was in violation of her

First Amendment rights. (rec. doc. 46-1, see also 31, p. 29).

The First Amendment protects a public employee's right, in certain circumstances,

to speak as a citizen on a matter of "public concern." *Pickering v. Board of Educ.*, 391 U.S.

563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Davis v. McKinney*, 518 F.3d 304, 311

(5th Cir.2008); *Givs. City of Eunice*, 512 F.Supp.2d 522 (W.D. La. 2007). Whether the

---

[16] Plaintiff elaborates on her  independent constitutional claims in greater detail in her memoranda in opposition to the motions to dismiss, which gives the court a better understanding of plaintiff's independent constitutional claims. (rec. docs. 31, 46-1).

[17]  Plaintiff's April 13, 2009, derogatory statements were that the "DON, ADON, and Manager's tendency to call her into their offices to maker unfounded criticisms of her work made her physically sick" (rec. doc. 60, p. 15).

speech at issue involves a matter of public concern is a question of law to be decided by the court. *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir.2008); *Givs*, at 544. Whether an employee's speech addresses a matter of public concern is to be determined by examining the content, form, and context of a given statement. *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.' " *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir.2001).

Issues rise to the level of public concern if an individual speaks primarily in his role as a citizen rather than as an employee addressing matters of only personal interest, or if the information conveyed is of "relevance to the public's evaluation of the performance of governmental agencies." Givs, citing *Coughlin v. Lee*, 946 F.2d 1152 (5th Cir. 1991)(citing Day v. South Park Indep. Sch. Dist., 768 F.2d 696, 700 (5th Cir.1985)). If a plaintiff's complaints about his supervisor are "personal grievances" that relate to the conditions of the plaintiff's employment and the quality of his work environment, or when the content of speech "deals with individual personal disputes and grievances," the speech does not involve a matter of public concern and is not entitled to First Amendment protection. Id, citing *Chiasson v. City of Thibodaux*, 347 F.Supp.2d 300, 309 (E.D. La. 2004); <u>see</u> <u>also</u> *Stewart v. Parish of Jefferson*, 951 F.2d 681 (5th Cir. 1992)(citation omitted).

In *Connick*, the Supreme Court held "that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ayoub v. Texas A & M University*,

927 F.2d 834 (5th Cir. 1991), citing *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).  A public employee, like any other citizen, has a right to free and open debate, opinion and expression. However, when he speaks as an employee on matters that address only his personal employment conditions, he is not protected from discharge for engaging in that speech by the First Amendment. Id.

Plaintiff describes her speech as "private speech" between co-workers (rec. doc. 46-1, p. 20).  Although plaintiff denied having made the statements for which she was ultimately disciplined, the statements allegedly included threats and complaints about her supervisor's treatment of her at work.  The content of the speech in this case relates to plaintiff Rosie Washington's personal employment relationship with defendants and involves matters of personal interest, not of public concern; therefore, it is not entitled to constitutional protection under the First Amendment.

Plaintiff has failed to allege a constitutional violation under the First Amendment; therefore, plaintiff's claim under the First and Fourteenth Amendments should be dismissed for failure to state a claim, and the individual defendants in their individual capacities are entitled to qualified immunity from plaintiff's claims under Section 1983 and 1985 based on the First Amendment.

b. Fifth Amendment Claims

Plaintiff alleges that defendants violated her Fifth Amendment rights by taking her "wages and benefits in conjunction with the disciplinary measures imposed after each of the three VR1s issued ..." (rec. doc. 46-1, p. 21).  Plaintiff also alleges that these takings violated La. R.S. 23:635, and support her claim that she was discriminated against based on race. Id.

The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 163-64, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998). It is well-settled that a constitutional remedy against a state actor under the Fourteenth Amendment does not lie where the state provides a meaningful post-deprivation remedy for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); see also *King v. State of Louisiana*, 294 Fed. Appx. 77 (5th Cir. 2008). The Louisiana Civil Service Rules allow an employee to seek review of a disciplinary action taken by her employer. See La. Const. Art. X. Plaintiff Rosie Washington states in her complaint that she filed several appeals with the Civil Service Commission; therefore, plaintiff is well-aware of this remedy. Additionally, Louisiana law recognizes a cause of action against an employer for the unlawful assessment of fines against employees, La. R.S. 23:635, which plaintiff has cited in her memoranda. Plaintiff could have resorted to either of these remedies to seek recovery of her property or reimbursement of her loss. See *King,* 294 Fed. Appx. 77, 86.

Due to the remedies provided at the state level, plaintiff does not have a claim for an unconstitutional taking of her wages in violation of the Fifth Amendment. It is recommended that plaintiff has failed to allege a constitutional violation under the Fifth Amendment; therefore, plaintiff's claim under the Fifth and Fourteenth Amendments should be dismissed for failure to state a claim and that the individual defendants in their individual capacities are entitled to qualified immunity from plaintiff's claims under Section 1983 and 1985 based on the Fifth Amendment.

c.     Seventh Amendment Claims

Plaintiff alleges that she is entitled to a jury trial in this matter based on her rights under the Seventh Amendment of the Constitution of the United States (rec. doc. 46-1, p. 22).  The Seventh Amendment provides the right to a jury trial in certain civil actions. <u>See</u> U.S. Const. Amdmt. VII. Plaintiff's complaint includes a demand for a jury trial (rec. doc. 60 p. 87).  Defendants in this matter do not have the power to grant or deny plaintiff's request for a jury trial in this matter. Plaintiff has failed to allege a constitutional violation under the Seventh Amendment; therefore, plaintiff's claim under the Seventh and Fourteenth Amendments should be dismissed for failure to state a claim,and the individual defendants in their individual capacities are entitled to qualified immunity from plaintiff's claims under Section 1983 and 1985 based on the Seventh Amendment.

d.     Tenth Amendment

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.  Plaintiff's allegations in connection with the Tenth Amendment are particularly difficult to decipher.  It appears that plaintiff's claim for violations of the Tenth Amendment is based on her dissatisfaction of this suit being heard in federal court (rec. doc. 60, pp. 77; rec. doc. 46-1, p. 22).  The court notes that plaintiff filed her original complaint containing federal claims in federal court, rather than filing suit in state court and limiting her claims to state law causes of action, which would have likely remained in state court. Plaintiff also states in her memorandum that defendants' deprivation of wages and benefits is in violation of state laws requiring spouses to provide financial support to each other based on the federal Defense of

Marriage Act (rec. doc. 46-1, p. 23). Plaintiff's claim that defendants' alleged deprivation of benefits and wages are in violation of a Louisiana law is a claim that should be brought in state court.

Plaintiff has failed to allege a constitutional violation under the Tenth Amendment; therefore, plaintiff's claim under the Tenth and Fourteenth Amendments should be dismissed for failure to state a claim, and the individual defendants in their individual capacities are entitled to qualified immunity from plaintiff's claims under Section 1983 and 1985 based on the Tenth Amendment.

e.      Thirteenth Amendment

 The Thirteenth Amendment to the United States Constitution provides in pertinent part that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII. Plaintiff alleges that defendants violated her rights under the Thirteenth Amendment by denying her equal protection of the laws and subjecting her to involuntary servitude by forcing her to continue working while they deducted wages for meritless employment violations and suspending her without pay and ultimately terminating her for allegedly not maintaining a sick leave balance of at least 8 hours as required by defendant (rec. docs.  60, 46-1, pp. 24-25).

Plaintiff has not alleged facts to support a cause of action for slavery or involuntary servitude.  Plaintiff's memoranda indicates that her claims under the Thirteenth Amendment are merely another means of bringing her claims for employment discrimination and retaliation based on race.  The Thirteenth Amendment does not establish an independent cause of action for employment discrimination. *Doffoney v. Board of Trustees for Beaumont*

*Independent School Dist.,* 731 F.Supp. 781 (E.D. Tex. 1989), citing *Laird v. Texas Commerce Bank—Odessa*, 707 F.Supp. 938 (W.D.Tex.1988); *Davidson v. Yeshiva University*, 555 F.Supp. 75 (S.D.N.Y.1982); *James v. Family Mart*, 496 F.Supp. 891 (M.D.Ala.1980); *Lopez v. Sears, Roebuck and Co.*, 493 F.Supp. 801 (D.Md.1980); *Walton v. Utility Products, Inc.*, 424 F.Supp. 1145 (N.D.Miss.1976).

Plaintiff has failed to allege facts that would support a constitutional violation under the Thirteenth Amendment; therefore, plaintiff's claim under the Thirteenth and Fourteenth Amendments should be dismissed for failure to state a claim, and the individual defendants in their individual capacities are entitled to qualified immunity from plaintiff's claims under Section 1983 and 1985 based on the Thirteenth Amendment.

Section 1981 Claims

Plaintiff brings claims under 42 U.S.C. 1981 and the Fourteenth Amendment for discrimination, retaliation, and hostile work environment based on race (rec. doc. 60, p. 61). Section 1981 prohibits racial discrimination, both public and private, in the making or enforcement of contracts. See 42 U.S.C. § 1981. In order to establish a claim under § 1981, a plaintiff must demonstrate that: (1) the plaintiff belongs to a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in the statute, which include the making and enforcing of contracts. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir.1994).[18]

---

[18] The elements of a claim under Title VII and 42 U.S.C. §1981 are the same and the claims are evaluated using the same analysis. See *Patel v. Midland Memorial Hosp. and Medical Center*, 298 F.3d 333 (5th Cir. 2002), citing *Pratt v. City of Houston*, 247 F.3d 601, 605, n.1 (5th Cir. 2001).

Similar to plaintiff's claims under Section 1983 and 1985, plaintiff again fails to detail the specific events underlying her Section 1981 claim and instead relies on conclusory allegations. The complaint fails to identify which "acts or omissions" of which defendants "were to harass, retaliate, and discriminate against Ms. Rosie Washington on account of her race, and created a hostile work environment," which allegedly constituted a violation of Section 1981, and the court is unwilling and unable to speculate which allegations are connected to plaintiff's claims for Section 1981 liability. Plaintiff has had two opportunities to amend her complaint to more specifically allege her Section 1981 claims against the individual defendants and has failed to do so, even after being put on notice beforehand of the deficiencies in her pleadings by defendants' motion to dismiss. Thus, the court recommends that plaintiff's claims against the individual defendants in their individual capacities under Section 1981 be dismissed.

IV.    State Law Claims

Plaintiff brings state law claims against the individual defendants for violations of Article I, Sections 2, 3, 4, 7, 12, and 22 of the Louisiana Constitution and La. Civil Code art. 2315 and 2320. Eleventh Amendment immunity bars plaintiff's claims against the individual defendants in their official capacities, so plaintiff's state law claims, if properly pled, could proceed against the individuals in their individual capacities only. Similar to plaintiff's federal claims, plaintiff's state law claims are based on bare bones, conclusory allegations. The court will address each state law claim individually.

a.    Article I, Section 2 of the Louisiana Constitution

Article 1, Section 2 of the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." Although the complaint

does not allege specific facts to support the claim under Article I, Section 2, plaintiff states in the memorandum that her due process rights were denied when she was denied a fair civil service hearing on the disciplinary charges brought against her by defendants (rec. doc. 31, p. 25). Plaintiff explains that the hearing officer did not require Burl Cain to testify at the hearing, plaintiff was not allowed to conduct discovery prior to the hearing, and plaintiff had limited subpoena power and access to her personnel file, which affected the quality of her presentation at the hearing (rec. doc. 31, pp. 25-26). Defendants contend that the individual officer defendants acting solely in their official capacities cannot be held personally liable for alleged violations of plaintiff's due process rights, citing *Driscoll v. Stucker*, 898 So.2d 32 (La. 2005). In *Driscoll*, the court held that defendant Dr. Stucker was not individually liable because his contact with plaintiff was solely in his capacity as Chairman of LSUHSC's Department of Otolaryngology. *Driscoll*, 898 So.2d at 52. Plaintiff does not identify a single individual defendant who was involved in the alleged violation of her due process rights. In fact, her complaints are focused on evidentiary decisions made by the civil service referee. Plaintiff's complaint, therefore, fails to state a claim under Article1, Section 2 against the defendants in their individual capacities.

      b.      Article I, Section 3 of the Louisiana Constitution

Article I, Section 3 of the Louisiana Constitution provides that "[n]o person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime." Plaintiff alleges that she was denied

equal protection of the laws and subjected to involuntary servitude (rec. doc. 60, p. 79). Defendants argue that Article 1, Section 3, does not provide a cause of action for plaintiff under the facts alleged.

Courts have previously held that Article I, Section 3, deals with **laws** that discriminate against an individual and does not create a cause of action against a private individual or company for violation of rights. *Smolensky v. General Electric Co.*, 2000 WL 341031 (E.D. La. 2000), citing *Hornsby v. Enterprise Transportation Co.*, 987 F.Supp. 512 (M.D. La. 1997). Plaintiff is not challenging a specific law, but the acts of the individual defendants; therefore, she does not have a cause of action under Article 1, Section 3. Furthermore, as previously discussed in connection with plaintiff's Thirteenth Amendment claims, plaintiff has not alleged facts to support a claim of involuntary servitude. Rather, plaintiff's factual allegations tend to support claims for racial discrimination and retaliation. Plaintiff's complaint, therefore, fails to state a claim under Article1, Section 3 against the defendants in their individual capacities.

c.     Article 1, Section 4 of the Louisiana Constitution

Article 1, Section 4 of the Louisiana Constitution provides in pertinent part that, "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power." Plaintiff contends that her rights under this section were violated when defendants withheld her income and benefits based on meritless allegations prior to setting and holding hearings before the Civil Service Commission (rec. doc. 31, p. 23). The complaint does not contain any allegations that the individual defendants in their individual capacities withheld plaintiff's income or benefits or disciplined plaintiff in violation

of this section; therefore, plaintiff has failed to state a claim under Article I, Section 4 against the individual defendants in their individual capacities.

       d.      Article 1, Section 7 of the Louisiana Constitution

Article 1, Section 7 of the Louisiana Constitution provides that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." The complaint is absolutely silent as to what "speech" forms the basis of their claim under Article 1, Section 7, so the court can only assume plaintiff is referring to the April 13, 2009, speech between coworkers for which plaintiff Rosie Washington received discipline.  In order for plaintiff to state a claim under Article1, Section 7, plaintiff must establish that the speech involved a matter of public concern as discussed in connection with their First Amendment claim. <u>See</u> *Johnson v. Southern University*, 803 So.2d 1140, 1146 (La. App. 1st Cir. 2001). Thus, for the same reasons plaintiff fails to state a claim under the First Amendment, she also fails to state a claim under Article 1, Section 7 against the individual defendants in their individual capacities.

       e.      Article 1, Section 12 of the Louisiana Constitution

Article 1, Section 12 of the Louisiana Constitution provides that "[i]n access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition."  Plaintiff alleges that defendants denied Rosie Washington's "physical access to the workplace and are endeavoring to prevent her continued employment" (rec. doc. 60, p. 81). Plaintiff also includes numerous allegations that her rights arising under Article 1, Section 12 were violated by the fact that

the Civil Service Commission has the exclusive power to hear and decide removal and disciplinary actions in the employment context and decide evidentiary matters in connection with the hearings. Id. Defendant argues that Article 1, Section 12 applies to "public areas," which LSP is not, and that plaintiff Rosie Washington has not been denied access to LSP; therefore, plaintiff fails to state a claim (rec. doc. 36-1).

The court in *Robertson v. Burger King, Inc.*, 848 F. Supp. 78 (E.D. La. 1994) explains that the term "access" as generally understood means the "ability to enter, ... [to] pass to and from, ... to obtain or make use of." Plaintiff Rosie Washington is no longer employed by LSP and, therefore, has no reason to access the LSP facility. There are no allegations in the complaint that LSP or any of the individual defendants have denied her access based on her race, but there are allegations that she was terminated based on her race. Plaintiff's claim under Article 1, Section 12, is really a claim for wrongful termination and discrimination based on race, which plaintiff can bring (and has brought) under Title VII. Thus, plaintiff's complaint fails to state a claim under Article 1, Section 12 against the defendants in their individual capacities.

f.      Article 1, Section 22 of the Louisiana Constitution

Article 1, Section 22 of the Louisiana Constitution provides that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." Plaintiff alleges that defendants violated her rights under this section by "causing the appropriate state court of appeal to be closed to them and their rights impaired in the state and federal courts" by the fact that the Civil Service Commission has the exclusive power to hear and decide removal and disciplinary actions

in the employment context and decide evidentiary matters in connection with the hearings (rec. doc. 60, p. 84). Plaintiff states in the memoranda that "[t]he civil service administrative process exists in direct contrast to the stated purpose of the judicial system" (rec. doc. 46-1, p. 30). As pointed out by defendants in their motion to dismiss, plaintiff does not state a claim against any of the individual defendants in their individual capacities in either the complaint or the memoranda in support. Plaintiff's challenge to the authority of the Civil Service Commission and the procedure and ability to appeal a decision of the Civil Service Commission does not state a claim against any of the individual defendants in their individual capacities. Plaintiff, therefore, has failed to state a claim against the defendants in their individual capacities under Article 1, Section 22.

g.      Louisiana Civil Code Article 2315

Plaintiff alleges that defendants "acts and omission" caused harm to plaintiff in violation of La. Civil Code art. 2315 and refer generally to the 60 pages of factual allegations to support their claims. Plaintiff states in the opposition memoranda that "[w]hen the tort complained of concerns a constitutional claim of discriminatory treatment, the plaintiff bears the additional burden of showing by the preponderance of evidence that the defendant had an intent to discriminate on account of the plaintiff's immutable characteristic. In this case, race" (rec. doc. 46-1, p. 16). Plaintiff further describes Mr. Washington's mental anguish damages as "damages brought about by the tortious conduct and harassment of the named individuals..." Id. p. 29.

It appears that the "tort" for which plaintiff's seek damages is the discriminatory and retaliatory treatment of the defendant, which has been adequately alleged under federal law. Moreover, Louisiana law includes specific statutes allowing claims for discrimination,

La. R.S. 23:301, et seq., and retaliation, La. R.S. 23:967, separate and apart from a claim under La. Civil Code art. 2315. Plaintiff have failed to allege any tort claims, that the court can decipher, that would result in liability under La. Civil Code art. 2315; therefore, plaintiff's claims under La. Civil Code art. 2315 should be dismissed.

h.    Louisiana Civil Code Article 2320

Plaintiff brings claims against defendants under La. Civil Code art. 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." As noted by defendants, plaintiff's claims against the employer defendants (State, LSP, DOC) and the individual defendants in their official capacities are barred by Eleventh Amendment immunity, and plaintiff can only bring claims against defendants in their individual capacities. La. Civil Code art. 2320 is a means of imposing vicarious liability on an employer for the acts of an employee; therefore, it does not impose individual liability on a defendant. Plaintiff has failed to state a claim under La. Civil Code art. 2320 against the individual defendants in their individual capacities, and their claims should be dismissed.

i.    Mr. Washington's Emotional Distress Claims

The complaint contains allegations that Mr. Washington suffered mental anguish damages as a result of the injuries inflicted upon his wife Rosie Washington (rec. doc. 60, p. 38). The complaint alleges that Mr. Washington suffers these damages as a result of witnessing his wife become upset at home as a result of defendants' treatment of her at work and witnessing defendant's treatment of her in person, including the December 29, 2008, incident on LSP grounds when Mrs. Washington experienced a diabetic episode after waiting for her Loudermill hearing to take place. Id. The complaint, however, does not

identify a specific statutory basis for Mr. Washington's mental anguish damages. Defendants move to dismiss Mr. Washington's claims for mental anguish damages under La. Civil Code art. 2315.6 based on prescription and because Mr. Washington did not witness any of the events that allegedly caused damage to Mrs. Washington.

Pursuant to La. Civil Code art. 2315.6, as Mrs. Washington's spouse, Mr. Washington could recover mental anguish damages that are "severe, debilitating, and foreseeable, if he viewed an event causing injury to Mrs. Washington or came upon the scene of an event soon thereafter. The court agrees with defendants that plaintiff's claims under La. Civil Code art. 2315.6 are tort damages and are, therefore, limited by the one-year prescriptive period in La. Civil Code art. 3492; therefore, all claims based on events that occurred more than one year prior to the date of filing this action, or prior to May 18, 2010, are barred by prescription. The court is unaware, based on the allegations in the complaint, of any events occurring after May 18, 2010, that Mr. Washington "viewed" or came upon soon thereafter that would have caused him to suffer severe, debilitating injuries. Thus, it is recommended that Mr. Washington's claims for mental anguish damages under La. Civil Code art. 2315.6 should be dismissed.

Accordingly,

**IT IS RECOMMENDED** that plaintiffs' motion to strike reply brief (rec. doc. 53) should be **DENIED**;

**IT IS FURTHER RECOMMENDED** that defendants' motion to dismiss (rec. doc. 25) should be **GRANTED IN PART and DENIED IN PART** as follows:

1.  Defendants' motion to dismiss should be **GRANTED** such that all of plaintiffs' claims against the State of Louisiana, Louisiana State Penitentiary,

Department of Public Safety and Corrections and the individual defendants (Burl Cain, Mary Anne Dubroc, Stayce Rodriguez Menzina-Falgout, Gwen Hardin, L. Bruce Dodd, Donald Barr, Ronald Jett) in their official capacities should be **DISMISSED**, with prejudice.

2.    Defendants' motion to dismiss should be **GRANTED** such that plaintiffs' federal claims against the defendants in their individual capacities (Burl Cain, Mary Anne Dubroc, Stayce Rodriguez Menzina-Falgout, Gwen Hardin, L. Bruce Dodd, Donald Barr, Ronald Jett) should be **DISMISSED**, with prejudice.

3.    Defendants' motion to dismiss should be **DENIED** with respect to plaintiffs' claims under Title VII against the State of Louisiana, Louisiana State Penitentiary, and Department of Public Safety and Corrections.

**IT IS FURTHER RECOMMENDED** that defendants' supplemental motion to dismiss (rec. doc. 35) should be **GRANTED** such that plaintiffs' state law claims against the individual defendants in their individual capacities (Burl Cain, Mary Anne Dubroc, Stayce Rodriguez Menzina-Falgout, Gwen Hardin, L. Bruce Dodd, Donald Barr, Ronald Jett) should be **DISMISSED,** with prejudice; and

**IT IS FURTHER RECOMMENDED** that all of plaintiffs' claims against individual defendants Jennifer Lemoine and Clarion Bay should be **DISMISSED**, without prejudice, pursuant to Rule 4(m) for failure to serve the defendants.

Signed in Baton Rouge, Louisiana, on August 21, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


**ROSIE WASHINGTON AND SHELDON WASHINGTON**

**CIVIL ACTION**

**NUMBER 11-334-BAJ-DLD**

**VERSUS**

**STATE OF LOUISIANA, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 (fourteen) days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 21, 2012.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**