UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSIE WASHINGTON AND SHELDON              CIVIL ACTION
WASHINGTON

VERSUS

STATE OF LOUISIANA, ET AL.                NO.: 11-00334-BAJ-RLB

RULING AND ORDER

Before the Court is a **Motion to Dismiss Second Amended and
Supplemental Complaint Pursuant to FRCP Rule 12(b)(1) and 12(b)(6) (Doc.
89)**, filed by Defendants Linda Bordelon and Sharon Dunbar, seeking an order from
this Court dismissing all claims against them. Plaintiff opposes the motion (Doc.
94).[1] Oral argument is not necessary. This suit is brought under the federal
question jurisdiction of this Court pursuant to 28 U.S.C. § 1331.

I.     Background

Plaintiff filed a Complaint with this Court on May 18, 2011, naming as
defendants, the State of Louisiana ("the State"), the Louisiana Department of Public
Safety and Corrections, the Louisiana State Penitentiary ("the Penitentiary"),
Warden Burl Cain, Mary Annette Dubroc, Stayce Falgout, Gwen Hardin, Assistant

---

[1] Plaintiff Rosie Washington ("Mrs. Washington") is now deceased. Her husband, Sheldon
Washington ("Plaintiff"), has been substituted as the sole Plaintiff in the case (Doc. 106). Most of the
claims for recovery, however, are in relation to Mrs. Washington's employment and therefore her
name will be used interchangeably in this ruling.

Warden L. Bruce Dodd, Assistant Warden Donald Barr, and Deputy Warden Ronald Jett (Doc. 1). After service, those defendants filed a Motion to Dismiss (Doc. 25) and Supplemental Motion to Dismiss (Doc. 36), which was granted in part and denied in part on September 18, 2012, following the issuance of the Magistrate Judge's Report and Recommendations (Doc. 69).

However, before the issuance of the Report and Recommendations, Mr. Washington filed a Second Amended and Supplemental Complaint, naming Bordelon and Dubroc as defendants. After service to both defendants was effected on November 8, 2012 (Doc. 89-1, at 2), the instant motion was jointly filed by these individual defendants on November 28, 2012 (Doc. 89). Bordelon and Dubroc seek dismissal from the lawsuit on all claims for the same reasons advanced by the other individual defendants, Warden Burl Cain, Mary Annette Dubroc, Stayce Falgout, Gwen Hardin, Assistant Warden L. Bruce Dodd, Assistant Warden Donald Barr, and Deputy Warden Ronald Jett, named in the Motion to Dismiss (Doc. 25) and Supplemental Motion to Dismiss (Doc. 36).

## II.    Motion to Dismiss Under 12(b)(6)

The basis of the Defendants' Motion to Dismiss is that all claims filed against them in their official capacities should be dismissed for lack of subject matter jurisdiction, and that all claims filed against them in their individual capacities fail to allege facts that would entitle Plaintiff to relief. The Court finds Rule 12(b)(6) to be the appropriate standard of review for all Plaintiff's claims against these Defendants. A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint

against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Rule12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

## III.  Analysis

### A.  Eleventh Amendment Immunity Defense

Bordelon and Dunbar assert that all claims, both state and federal, against them in their official capacities are barred by the Eleventh Amendment, except Title VII claims.[2] The Eleventh Amendment of the U.S. Constitution provides as follows:

---

[2] The Defendants assert that, because of Eleventh Amendment immunity, this Court lacks subject matter jurisdiction to adjudicate claims against them in their official capacities under Federal Rules of Civil Procedure Rule 12(b)(1) (Doc. 89). The Court, however, finds that the Rule 12(b)(6) is appropriate to determine the merits of the Defendants' motion.

Case 3:11-cv-00334-BAJ-RLB   Document 110   09/30/13   Page 3 of 25

> The Judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted against
> one of the United States by Citizens of another State, or by Citizens or
> Subjects of any Foreign State.

U.S. CONST. amend. XI. This language expressly encompasses not only suits

brought against a state by citizens of another state, but suits against a state by

citizens of that same state. See *Hans v. Louisiana*, 134 U.S. 1 (1890); *Papasan v.*

*Allain*, 478 U.S. 265, 276 (1986); see also *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 98, (1984); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

"A state's Eleventh Amendment immunity extends to any state agency or entity

deemed an alter ego or arm of the state." *Perez v. Region 20 Educ. Service Center*,

307 F.3d 318, 326 (5th Cir. 2002). In general, therefore, a suit in which the state or

one of its agencies or departments is named as the defendant is proscribed by the

Eleventh Amendment. *Lewis v. University of Texas Medical Branch at Galveston*,

665 F.3d 625, 630 (5th Cir. 2011) (citing *Pennhurst*, 465 U.S. 89, 100 (1984)). This

jurisdictional bar applies regardless of the nature of the relief sought. *Id.*

Additionally, *Pennhurst* held that the Eleventh Amendment bars the

adjudication of pendent state law claims against non-consenting state defendants in

federal court. *Pennhurst*, 465 U.S. at 122 ("We concluded above that a claim that

state officials violated state law in carrying out their official responsibilities is a

claim against the State that is protected by the Eleventh Amendment. ... We now

hold that this principle applies as well to state-law claims brought into federal court

under pendent jurisdiction."). Further, Congress has not abrogated a state's

4

immunity in cases where a plaintiff brings Section 1981, Section 1983, or Section 1985 claims (although it has done so in relation to Title VII claims).[3]

A state's immunity from suit is not absolute, however, and the Supreme Court has recognized situations in which an individual may sue a state in federal court. *See Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). One such situation pertains to voluntary waiver. A state may waive its Eleventh Amendment immunity by voluntarily invoking federal court jurisdiction, or by making a "clear declaration" that it intends to submit itself to federal court jurisdiction. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Generally, the State of Louisiana has not waived its immunity from suit in federal court. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979); La. R.S. § 13:5106(a). In this case, it has previously been established that the State has properly invoked its Eleventh Amendment immunity in this suit (Doc. 65 at 6).[4]

---

[3] "Section 1983 does not, explicitly or by its clear language, indicate on its face an intent to abrogate the immunity of the states." *Walker v. Livingston*, 381 Fed.Appx. 477, 478 (5th Cir. 2010) (citing *Quern v. Jordan*, 440 U.S. 332 (1979); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986) (Federal law claims arising under § 1983 are so precluded). The Fifth Circuit has also found that Congress has not abrogated the states' immunity for suits under Sections 1981 and 1985. See *Hines v. Mississippi Dep't of Corrections*, 239 F.3d 366 (5th Cir. 2000); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981).

[4] *See* the Report and Recommendations, adopted by the District Court (Doc. 69).

Case 3:11-cv-00334-BAJ-RLB   Document 110   09/30/13   Page 5 of 25

As to individual defendants sued in their official capacity, the Eleventh Amendment also bars a suit against a state official when "the state is a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101-02 (citations omitted). Thus, the general rule is that relief sought against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the state itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, 465 U.S. at 101-02 (citations omitted); see also *Okpalobi v. Foster*, 244 F.3d 405, 412 (5th Cir. 2001) (plaintiff cannot evade Eleventh Amendment immunity by naming an individual state officer as a defendant in lieu of the state itself). As such, any claims brought against the State that are protected by immunity also extend to state officials sued in their official capacity.

Immunity may be waived by individual defendants, just as it can be waived by the State. Plaintiff claims that Bordelon and Dunbar waived immunity when the initial suit against the parties was removed to federal court. However, there has been no indication of a waiver of immunity by any party involved in this litigation. Nothing in the record indicates that Bordelon and Dunbar voluntarily submitted to the court's jurisdiction, as they were added as supplemental parties to this suit after it was brought in federal court. Thus, since Plaintiff brings suit against Bordelon and Dunbar in their official capacity as employees of the State, the Court does not

6

find a reason why they may not invoke their Eleventh Amendment immunity protection against all claims, except Title VII.[5]

## B.    The Title VII Claim

Under Title VII, it is illegal "for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). For an individual to be liable under Title VII, he or she must meet Title VII's definition of "employer." *Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir. 1994). Title VII defines "employer" as: "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person[.]" 42 U.S.C. § 2000e(b). "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions...." 42 U.S.C. § 2000e(a).

Although Title VII defines "employer" to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (affirming Rule 12(b)(6) dismissal where the trial court held that employees may not be sued for damages in their individual capacities)). The Fifth Circuit has held that

---

[5] An exception to immunity exists where a plaintiff seeks prospective injunctive relief against state employees in their official capacities. As such, the plaintiff may sue under the doctrine set forth by the Supreme Court in *Ex Parte Young,* 209 U.S. 123 (1908). The Supreme Court held that "a suit challenging the constitutionality of a state official's action is not one against the State," and thus there is no Eleventh Amendment protection." *Pennhurst,* 465 U.S. at 102 (referencing the holding in *Ex Parte Young*). If this is the case, it is appropriate for the plaintiff to seek injunctive relief. Here, however, Mrs. Washington is now deceased, and she never returned to her employment at the Penitentiary after her initial termination. Thus, any claims for injunctive relief, or future injunctive relief, are now moot.

"relief under Title VII is available only against an employer, not an individual supervisor or fellow employee." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) (citing *Grant*, 21 F.3d at 651–53); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities").

Neither Bordelon nor Dunbar meet the definition of employer as that term is defined under the Title VII. As such, Title VII claims cannot be sustained against them in their individual or official capacities. Thus, the Motion to Dismiss on the Title VII claim is GRANTED, and all claims against Bordelon and Dunbar brought under Title VII in their official and individual capacities are dismissed.

## C. Section 1983 or Section 1985 Claims

Bordelon and Dunbar contend that in order to prevail on the Section 1983 claim, Plaintiff must prove that a person acting under the color of state law deprived Mrs. Washington of a right secured by the U.S. Constitution or the laws of the U.S.[6] They also contend that in order to prevail on a Section 1985 claim, Plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United

---

[6] The Defendants direct the Court to *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L.Ed.2d. 130 (1999).

8

States.[7] In both Section 1983 and Section 1985, Bordelon and Dunbar assert that there must be a violation of a constitutional right, which Plaintiff cannot point to in any of the facts alleged in the Complaint. In the alternative, Bordelon and Dunbar assert that the allegations against them do not preclude a qualified immunity defense.

Plaintiff, however, asserts that Bordelon and Dunbar used their positions as state employees to act on behalf of the State and also used state resources to inflict injury upon Mrs. Washington. As such, Bordelon and Dunbar are liable in their official and individual capacities for violations under the First, Fifth, Seventh, Tenth, and Thirteenth Amendments (Doc. 94-1, at 10).[8]

### i.     Section 1983

Plaintiff asserts that the Defendants acted under color of state law by using their offices and resources, with the aid, support and consent of the State and state agencies, to deprive Mrs. Washington of certain protected rights and therefore they should be held liable in their individual capacities (Doc. 94-1, at 11).   In doing so, Plaintiff alleges violations of the First, Fifth, Seventh, Tenth, and Thirteenth Amendments. The Defendants dispute these allegations on the basis that none of the alleged actions taken against Mrs. Washington were unlawful.

---

[7] The Defendants direct the Court to *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).

[8] Plaintiff's original Complaint alleges violations of the First, Fifth, Seventh, Tenth, and Thirteenth Amendments, made applicable to the citizens of the States through the Fourteenth Amendment (Doc. 1).

9

Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. Alone, § 1983 does not create any federally protected right, but it provides a cause of action for individuals to enforce federal rights created elsewhere, such as other federal statutes or the Constitution. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979) (Section 1983 "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."). To prevail on a Section 1983 claim, it must be proven that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or the laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). Such constitutional violations should be specified by the plaintiff, and plaintiff is required to file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. See *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Moreover, in a claim asserted under Section 1983 "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

In the facts alleged, it appears that Dunbar, the Director of Nursing who also

10

served as one of Mrs. Washington's supervisors, called Mrs. Washington at home on June 30, 2011 to ask her to take on a one-time additional workload as part of the duties of her shift (Doc. 61, ¶ 88). Specifically, Plaintiff alleges that Dunbar called, indicating that "she wanted Mrs. Washington to be responsible" for a variety of tasks. Plaintiff also asserts that Dunbar claimed that the assignment would be a "one-timer" (Doc. 61, ¶ 88). It is further alleged that, during this call, Mrs. Washington started to cry, as she believed the additional workload would be too much for her to handle and because no one else would ever be assigned such an onerous workload. It is asserted that Mrs. Washington asked Dunbar if she could take additional breaks but that Dunbar did not want to discuss the matter further because "[i]f they started getting picky about the matter everyone would only get a few minutes" (Doc. 61, ¶ 89).

Plaintiff goes on to allege that Dunbar told Mrs. Washington that she would be her friend despite what the other employees said about her, and that such statement upset Mrs. Washington even further, prompting her to tell Mr. Washington that Dunbar was "being mean to her" (Doc. 61, ¶ 90). Allegedly, such behavior upset Mr. Washington. It is contended that Dunbar's behavior was intentional, harassing, and hostile (Doc. 61, ¶ 90). Finally, Plaintiff alleges that Dunbar testified at the civil service hearing that there was no requirement for a nurse to call the department if it was anticipated that she would arrive late to work, although Mrs. Washington alleged that Dunbar required her to do so. (Doc. 61, ¶ 146).

11

In the case of Bordelon, Plaintiff contends that Bordelon miscalculated Mrs. Washington's leave time and, when questioned, refused to discuss the matter (Doc. 61, ¶ 128). On another occasion, Mrs. Washington allegedly attempted to speak to Bordelon about two deductions from her wages. Ms. Washington was told that her employer had attempted to adjust Ms. Washington's wages and leave in connection with an error, and later attempted to correct an overpayment (Doc. 61, ¶ 129). It is further alleged that Bordelon provided payroll statements explaining the payroll calculations, but the explanation did not seem logical to Ms. Washington. *Id.* Later in the Complaint, Plaintiff alleged that Bordelon participated in a telephone conversation with Mrs. Washington to discuss her sick leave balance, which the Court assumes was another attempt by Plaintiff to show that her leave balance was being miscalculated (Doc. 61, ¶ 136).[9]

Even assuming these assertions to be true, Plaintiff has failed to present an actionable Section 1983 claim. Plaintiff fails to allege specific, non-conclusory facts which establish the deprivation of a right under Section 1983. Both Bordelon and Dunbar were carrying out the duties they were assigned as employees. It is not a constitutional violation for a supervisor to ask or direct a subordinate employee to take on additional duties or to work an extra shift. Without more information, such a claim is not viable. Further, regarding the alleged statement made to Mrs.

---

[9] For the first time, Plaintiff asserts in his Response to the motion that Bordelon and Dunbar testified falsely under oath at the Civil Service hearing regarding Mrs. Washington's employment. However, because Plaintiff does not raise this claim in his Complaint, the Court will not consider it, nor is there evidence in the Complaint to support this allegation.

Case 3:11-cv-00334-BAJ-RLB   Document 110   09/30/13   Page 12 of 25

Washington, Dunbar's comment about what others allegedly thought of Mrs. Washington may have been in poor taste, but does not rise to the level of a violation of a constitutional right, and it hardly rises to the level of actionable harassment.

Moreover, the Court can find no constitutional violations by Bordelon's alleged acts. Her discussion with Mrs. Washington regarding sick leave and wage increments was completely within the duties of her employment. To the extent that Bordelon unintentionally miscalculated any sick leave balances owed to Mrs. Washington, such errors do not constitute Constitutional deprivations.

Plaintiff also alleges that Ms. Bordelon is a member of the "B-Line family" with strong ties to the management officials of the Penitentiary. It is further asserted that Bordelon acted against Mrs. Washington for personal reasons, in an attempt to have Mrs. Washington removed from her position. Other than this allegation, Plaintiff offers no evidence to support this assertion or tie any such allegation to Constitutional violations. These are conclusory, subjective statements that are unsupported by any specific details that would enable the Court to take this claim seriously.

Because Plaintiff has failed to allege specific, nonconclusory facts in the Complaint that would establish a specific act or omission made under color of state law in violation of Plaintiff's federal rights, the Motion to dismiss shall be granted insofar as the Defendants seek dismissal of the claims asserted under 42 U.S.C. §1983 in their individual capacities.

13

### ii. Section 1985

Like a Section 1983 claim, a plaintiff must establish that there exists an underlying violation of constitutional rights or privileges secured elsewhere. See *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983).

For the same reasons offered under Section 1983, the Court cannot find credible evidence of any of the Constitutional violations asserted by Plaintiff under Section 1985. Moreover, the Court cannot find any evidence that either Bordelon or Dunbar participated in any acts in furtherance of a conspiracy against Mrs. Washington. Indeed, Plaintiff contends that Dunbar's actions against Mrs. Washington were rooted in false statements by other employees, and that Bordelon's actions were the result of her familial ties to other employees at the Penitentiary (Doc. 94-1, at 11). She offers no further details of the alleged conspiracy, such as when, where, how, or why anyone would form a conspiracy against her. As such, Plaintiff contends that these defendants acted for personal gain and interests "into an ongoing [tortuous] enterprise." *Id.* These conclusory allegations are simply not enough to satisfy a Section 1985 claim. *Twombly, supra.* Accordingly, the Motion to Dismiss shall be granted insofar as the Defendants seek dismissal of claims asserted pursuant to 42 U.S.C. §1985 in their individual capacities.

### D. Qualified Immunity, Section 1981, and Injunctive Relief

The Court has already found that there were no constitutional violations committed by Bordelon or Dunbar. Accordingly, for the reasons previously offered,

14

the Court finds it unnecessary to address Plaintiff's claims under Section 1981, or the request for injunctive relief. Similarly, the Court finds it unnecessary to address Defendant's defense of qualified immunity. Thus, the Section 1981 claims against Bordelon and Dunbar is dismissed, and the Motion to Dismiss is GRANTED.

## IV. Plaintiff's State Law Claims

### A. Article I, Section 2 and Section 4

Article I, Section 2 of the Louisiana Constitution provides that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." Article I, Section 4 of the Louisiana Constitution states, in pertinent part, that "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power."

Plaintiff claims that Mrs. Washington's rights under these sections of the Louisiana Constitution were violated when she was "forced to work more for the wages she was to receive for the work agreed to be undertaken as a state employee [sic]" (Doc. 94-1, at 14). Specifically, it is alleged that Dunbar deliberately caused Mrs. Washington's workload to be more burdensome than other similarly situated employees (Doc. 94-1, at 14-15). Regarding Bordelon, Plaintiff alleges that as a member of a family with ties to the management officials of the Penitentiary, Bordelon "took up the continuing of tortuous conduct of the wardens and nursing administrators by refusing to properly credit back to Mrs. Washington's sick leave" (Doc. 94-1, at 15). The Defendants, however, contend that Plaintiff's claim lacks

15

merit. The Defendants also claim that no personal liability attaches as to an official operating solely in his official capacity for alleged violations of Article I, Section 2.[10]

The Court finds Plaintiff's claims under Section 2 do not support a due process violation under state law. Plaintiff alleges facts against Bordelon and Dunbar that are nothing more than unfounded accusations of a conspiracy to have Mrs. Washington fired. However, Plaintiff fails to point to any evidence to support this theory.

Further, Plaintiff's claims of a property deprivation by the Defendants are unfounded under Article I, Section 4. Plaintiff asserts that Dunbar's request that she take on an additional workload and Bordelon's failure to re-credit her back leave as a payroll employee are clear property violations committed by the Defendants with the intent to cause her harm. However, this argument is unpersuasive. As Defendants point out, neither Bordelon nor Dunbar actually took any "property" from Mrs. Washington.[11] The Motion on these claims is granted, and Plaintiff's claims are dismissed.

### B. Article I, Section 3

In pertinent part, Article 1, Section 3 of the Louisiana Constitution provides that "[n]o person shall be denied the equal protection of the laws. No law shall

---

[10] The Defendants direct the Court to *Driscoll v. Stucker*, 04-0589 (La. 2005), 893 So.2d 32.

[11] To the extent that Mrs. Washington claims a property right to her employment, she has failed to state that her continued employment amounted to a property right. Even, *assuming arguendo*, that she can demonstrate this right, she has failed to allege facts to show Bordelon and Dunbar acted to deprive her of any such property right.

discriminate against a person because of race or religious ideals, beliefs, or affiliations. ... Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."

As found in the Report and Recommendations (Doc. 65), Article I, Section 3 deals with **laws** that discriminate against an individual and does not create a cause of action against a private individual or company for violation of rights. *Smolensky v. General Electric Co.*, 2000 WL 341031 (E.D. La. Mar. 3, 2000) (citing *Hornsby v. Enterprise Transportation Co.*, 987 F. Supp. 512 (M.D. La 1997)). Plaintiff's claims are against the individual Defendants, not a specific law. Also, Plaintiff has not shown how either of these particular Defendants subjected Mrs. Washington to involuntary servitude. Thus, there is no valid claim under this Section. The Motion on these claims is granted, and Plaintiff's claims are dismissed.

### C.    Article I, Section 7

Article I, Section 7 of the Louisiana Constitution provides that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

Plaintiff does not allege any specific facts relating to Bordelon or Dunbar on restrictions of speech, nor is there evidence to support such alleged restrictions.   In the response to the instant motion, Plaintiff cites to a general principal of law, contending that "[w]hen a governmental entity creates a limited public forum the governmental entity may not discriminate against the individuals on the basis of

17

their viewpoints" (Doc. 94-1 at 16). [12] Plaintiff's arguments make no specific connection to these Defendants, only asserting that Bordelon and Dunbar were a part of a tortuous enterprise and should be liable *in solido* with the other Defendants in the case (Doc 94-1, at 17). The Court is not persuaded by this illogical and senseless argument. Because no specific allegations against the Defendants regarding Mrs. Washington's speech have been offered, this claim must fail. Thus, the Motion is granted and Plaintiff's claims under this Section are dismissed.

### D.    Article I, Section 12

Article I, Section 12 provides that "[i]n access to public areas, accommodations, and facilities, every person shall be free from discrimination based on race, religion, or national ancestry and from arbitrary, capricious, or unreasonable discrimination based on age, sex, or physical condition."

Plaintiff contends that Mrs. Washington had a right to receive public documents including the payroll documents prepared by Bordelon.[13] He further contends that Mrs. Washington had a right to access the workplace from December 8-9, 2011, until the date of her untimely death. It is also alleged that Mrs. Washington was deprived of such right by Dunbar when Mrs. Washington was

---

[12] Plaintiff directs the Court to "*Campbell v. St. Tammany School Board*, 206 F.3d 482, rehearing en banc denied (5th Cir. 2000); 231 F.3d 937, vacated 121 S.Ct. 2518, 533 U.S. 913, 150 l.Ed.2d 691 92001), on remand 300 F.3d 526 (5th Cir.2002); and *Good News Club v. Milford Central School*, 121 S.Ct. 2093, 533 U.S. 98, 150 l.Ed.2d 151 (2001)."

[13] Plaintiff directs the Court to *Parish of East Baton Rouge v. Capital City Press*, 7 So. 3d 21 (2009). The proper citation is *City of Baton Rouge v. Capital City Press L.L.C.*, 07-1088 (La. App. 1 Cir. 02/03/09), 7 So.3d 21.

Case 3:11-cv-00334-BAJ-RLB   Document 110   09/30/13   Page 18 of 25

required to call her employer if Mrs. Washington anticipated reporting to work late, but that she could not reach Dunbar because Dunbar was attending a Christmas party. As a result, Mrs. Washington was not permitted to enter onto the premises of the Penitentiary (Doc. 94-1, at 17). Plaintiff asserts that this event triggered the wrongful discharge of Mrs. Washington. The Defendants, however, assert that the provisions of Section 12 apply to areas in which the general public has access. *Robertson v. Burger King, Inc.*, 848 F. Supp. 78 (E.D. La. Apr. 5, 1994). The Defendants argue that because the Penitentiary is not a place to which the general public has access, and because Mrs. Washington is no longer employed, she has no right to enter the premises.

Plaintiff does not refute the law in *Robertson* and again makes allegations that the Defendants acted so as to participate in a tortuous enterprise against Mrs. Washington.   This assertion is not sufficient to establish a claim under this Section. The Court agrees with the Defendants' assessment of *Robertson* and also agrees that Mrs. Washington enjoyed no right to enter the Penitentiary after her employment ended. Moreover, the Court fails to see how Dunbar violated Mrs. Washington's rights by requiring her to report that she would arrive to work late. It seems logical that a medical facility would need to know if an employee would not arrive to work on time, so that adequate patient care could be provided. Nonetheless, nothing about Plaintiff's claim under this Section in anyway resembles a deprivation of rights guaranteed under the Louisiana Constitution.   Plaintiff has provided no statutory or jurisprudential support for the proposition that a former state employee enjoys a

19

Case 3:11-cv-00334-BAJ-RLB   Document 110   09/30/13   Page 19 of 25

constitutional right to access state-owned premises after her employment has ended. Accordingly, the Motion is granted and Plaintiff's claims under this Section are dismissed.

### E. Article I, Section 22

Article I, Section 22 of the Louisiana Constitution provides that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."

Plaintiff alleges that Bordelon and Dunbar testified falsely under oath at the Civil Service hearing "to thwart the administrative process and continue the tort which was begun against Mrs. Washington in 2008 by the nursing administrators of the Louisiana State Penitentiary" (Doc. 94-1, at 15). As such, Mrs. Washington was prevented from receiving a fair hearing before the State Court of Appeal (Doc. 94-1 at 16). The Defendants assert that, because this is the first time Plaintiff alleges *false* testimony under oath by the Defendants, such claim is outside the scope of the Complaint and cannot be considered.[14] Further, the Defendants contend that none of the facts can be construed to show Bordelon or Dunbar denied Plaintiff access to the courts.

The Court cannot find any plausible allegations in the Complaint that claim that Bordelon or Dunbar, in their individual capacities, denied Plaintiff the right to

---

[14] The Defendants direct the Court to *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).

access the court system or that Defendants lied at the hearing. Plaintiff has not made this allegation until his Response to this motion *sub judice* and the Court finds no evidence in the Complaint to support such an allegation. The Motion is granted and Plaintiff's claims under this Section are dismissed.

### F.   Louisiana Civil Code Article 2315

Louisiana Civil Code article 2315 provides that "[e]very act whatever man that causes damage to another obliges him by whose fault it happen to repair it." Plaintiff asserts that Ms. Bordelon and Ms. Dunbar, through their " acts and omissions," are liable in their official and individual capacities for the damage they caused to the Washington family through their tortuous conduct as set out in the Complaint and Response (Doc. 94-1, at 18). Such acts, Plaintiff alleges, deprived Mrs. Washington of her wages, benefits, and eventually employment.

Plaintiff, however, fails to allege specific facts that would implicate Louisiana tort law violations to these particular Defendants. Plaintiff claims that Dunbar gave Mrs. Washington an onerous workload on a particular occasion, and that Bordelon miscalculated her sick leave balance and did not attempt to change it when prompted by Mrs. Washington. These acts are not the type of allegedly tortuous conduct contemplated by the Civil Code. Moreover, the Court does not find that these acts rise to the level of a tort, and any damages suffered by Mrs. Washington were inconsequential. The Motion on this claim is granted and Plaintiff's claims under this provision are dismissed.

21

### G.     Louisiana Civil Code Article 2320

Louisiana Civil Code article 2320 provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Plaintiff does not make any specific arguments as to how Bordelon and Dunbar are liable under this article. Thus, it is assumed that Plaintiff still claims they are liable *in solido* with the other former Defendants in the case. As the Magistrate Judge observed, article 2320 is a means of imposing vicarious liability on an employer for the acts of an employee; it does not impose individual liability on a defendant (Doc. 65, at 31). As such, there is no claim against Bordelon and Dunbar in their individual capacities. The Motion on this claim is granted and Plaintiff's claims under this provision are dismissed.

### H.     Claims for Mental Anguish or Emotional Distress

Under Louisiana law, "claims for negligent infliction of emotional distress are limited to 'persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter.'" *Maurice v. Eli Lilly & Co.*, 2005 WL 3542902, at * 5 (E.D. La. Nov. 7, 2005). "[T]he injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable." *Id.*

Plaintiff claims that he is entitled to assert mental anguish damages against the Defendants because Bordelon and Dunbar "engaged in conduct which was tortuous under the federal and state constitutions and laws in such a way as to

22

constitute the continued commission of tortuous violations against Rosie and Sheldon Washington" (Doc. 94-1 at 19). Defendants contend that because Plaintiff did not view the events complained of nor did he come upon the scene shortly thereafter, Louisiana Civil Code article 2315.6 does not allow him to recover (Doc. 89-1, at 21).

First, the Court cannot identify from the Complaint those specific events which form the basis of this claim. As stated above, it is not the Court's role to guess which allegations Plaintiff wishes to make against particular Defendants. Nevertheless, it is assumed that Dunbar's request for Mrs. Washington to take on an additional workload in a telephone conversation is the basis for the mental anguish claim against Dunbar. It is also assumed that Mrs. Washington's frustration with Bordelon for incorrectly computing her leave balance and futile attempts to make changes to it form the basis for the mental anguish claim against Bordelon.

Pursuant to Louisiana Civil Code article 2315.6, Plaintiff is the proper party to recover mental anguish damages if what he witnessed caused severe and debilitating emotional distress. However, based on the facts alleged in the Complaint against these particular Defendants, the Court concludes there was no conduct that would cause the kind of emotional distress contemplated by this precept of law. The only emotional distress hinted at, in regards to these particular Defendants, is that Mrs. Washington engaged in a phone conversation with Dunbar, during which Mrs. Washington started to cry, later to claim that Dunbar was "being mean to her" (Doc. 61, ¶ 89-90). Such alleged behavior simply does not form the lawful basis of a severe

23

emotional distress claim under Louisiana law. As for Bordelon, there is no specific mention of how the dispute between Mrs. Washington and Ms. Bordelon over the sick leave balance personally affected Plaintiff.

The Court understands that, as the spouse of Mrs. Washington, Plaintiff more than likely developed strong feelings of sympathy for his wife during her employment-related struggles. However, those feelings are not enough to recover mental anguish damages. In Louisiana jurisprudence, it is understood that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive list of serious emotional distress includes neuroses, psychoses, chronic depression, phobia, and shock." *Held v. Aubert*, 02-1486 (La. App. 1 Cir. 5/9/03), 845 So.2d 625, 634. Plaintiff has not put forth any evidence to show that he suffered mental anguish anywhere close to this definition of serious emotional distress. There is no evidence that he sought treatment, was unable to perform daily tasks, nor was he physically ill during Mrs. Washington's work-related troubles. Thus, the Motion is granted and Plaintiff's claims under this provision are dismissed.

24

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss Second Amended and Supplemental Complaint Pursuant to FRCP Rule 12(b)(1) and 12(b)(6) (Doc. 89)** is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Linda Bordelon and Sharon Dunbar in their individual and official capacities be dismissed **WITH PREJUDICE**.

Baton Rouge, Louisiana, this 30th day of September, 2013.

_Brian a. John_

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

25