UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROSIE WASHINGTON, ET AL.                                CIVIL ACTION

VERSUS

STATE OF LOUISIANA, ET AL.                              NO.: 3:11-cv-00334-BAJ-RLB

## RULING, ORDER AND JUDGMENT

Before the Court is Defendants' **MOTION FOR SUMMARY JUDGMENT (Doc. 129)** and various related requests, (*see* Doc. 130; Doc. 134; Doc. 137). Plaintiffs have filed a response styled **MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 130)**, which the Court construes as an opposition memorandum.[1] The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Additional briefing is not required.[2] Oral argument is not necessary.

---

[1] Plaintiffs assert that Defendants' "Motion for Summary Judgment [must be stricken] because the document is insufficient and redundant." (Doc. 130 at p. 1). The Court cannot agree. Defendants' Motion identifies "material facts" which Defendants assert "cannot be . . . genuinely disputed," and supports Defendants' position by "citing to particular parts of materials in the record, including . . . affidavits . . . [and] admissions," Fed. R. Civ. P. 56(c). (*See generally* Doc. 129-1 (Defendants' Memorandum in Support of Motion for Summary Judgment)). In other words—and at risk of stating the obvious—Defendants' Motion tracks *precisely* the requirements of a motion for summary judgment. *See* Fed. R. Civ. P. 56(c). Accordingly, Plaintiffs' **Motion to Strike (Doc. 130)** will be **DENIED**. However, because Plaintiffs have inexplicably *failed* to file an opposition to Defendants' Motion for Summary Judgment despite making it quite clear that they *do* oppose Defendants' Motion, (*see* Doc. 130 at p. 1 ("[D]efendants' motion for summary judgment is insufficient in its premises, . . . [assumes] facts . . . without any support, and [relies] solely on the insufficient support of one affidavit . . . .")), the Court will deem Plaintiffs' Motion to Strike as their opposition memorandum.

[2] Accordingly, Plaintiffs' **Motion Requesting Permission to File a Reply to Defendants' Opposition to Plaintiffs' Motion to Strike Defendants' Motion for Summary Judgment (Doc. 134)**, *and* Plaintiffs' **Motion to File Reply to Opposition to Motion to File Reply to Opposition to Motion to Strike Motion for Summary Judgment (Doc. 137)** will each be **DENIED**.

I.  BACKGROUND

The Court has already recited the relevant facts and procedural history in this matter on multiple occasions. (*See* Doc. 65 at pp. 1–4 (Magistrate Judge's Report recommending dismissal of certain claims); Doc. 110 at pp. 1–2) (Order granting motion to dismiss certain Defendants); Doc. 140 at pp. 1–2 (Magistrate Judge's Order granting motion to amend complaint)). Suffice for now to say that Plaintiffs Rosie Washington and her husband, Sheldon Washington (collectively "Plaintiffs"), assert various discrimination-related claims against the State of Louisiana and certain state agencies and individuals. (*See generally* Doc. 141 (Plaintiffs' Third Amended and Supplemental Complaint)).[3] Each of Plaintiffs' allegations stem from Mrs. Washington's employment as a nurse at the Louisiana State Penitentiary ("LSP"). (*Id.*). In broad strokes, Petitioners' Complaint asserts that during her ten years of employment at LSP, Mrs. Washington suffered "discriminat[ion] . . . on account of her race [African-American]," and "retaliat[ion] . . . [for having filed] complaints and grievances." (*Id.* at ¶ 69).

Following orders granting Defendants' various motions to dismiss, the *only* claims remaining are Plaintiffs' claims against the State of Louisiana, the Louisiana State Penitentiary, and the Louisiana Department of Public Safety and Corrections (collectively "Defendants"), for disparate treatment, retaliation, creating a hostile

---

[3] Mrs. Washington died on January 9, 2013. On August 9, 2013, the Court allowed Mr. Washington, to substitute himself, in his capacity as administrator of her estate, as a proper substitute for Mrs. Washington pursuant to Federal Rules of Civil Procedure Rule 25. (Doc. 106).

work environment, and discriminatory discharge, each in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 § U.S.C. 2000e, *et seq.* (*See* Doc. 140 at pp. 1–3; *see also* Doc. 65 at pp. 9–14). Defendants' Motion for Summary Judgment seeks to dismiss these remaining claims "with prejudice," and "at Plaintiffs' cost." (Doc. 129 at p. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing

3

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Title VII prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating against "any individuals . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where a plaintiff's claims of discrimination are based on circumstantial evidence, the Court proceeds according to the burden-shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012). "The first step of the *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Id.* (quotation marks and alterations omitted). If the plaintiff establishes a *prima facie* case, the Court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* (quotation marks omitted). If the defendant meets its burden of production, "the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.* (quotation marks and alterations omitted).

Here, for various reasons, each of Plaintiffs' Title VII claims fails.

4

*a. Disparate Treatment*

Plaintiffs' Third Amended and Supplemental Complaint is 90 pages long and *far* from clear. Indeed, it might charitably be described as a "shotgun pleading."[4] *Kelly v. Huzella*, 71 F.3d 878 at *4 (5th Cir. 1995) (unpublished but persuasive) (describing a "shotgun pleading" as "frivolous"). Nonetheless, Plaintiffs' scattershot Complaint contains a number of allegations creating a colorable claim for disparate treatment in violation of Title VII. (*See generally* Doc. 141). In particular—and as noted by the Magistrate Judge—Plaintiffs' Complaint alleges that Mrs. Washington was "treated less favorably than other similarly situated white employees" when "she was subject[ed] to various negative employment actions," including:

> employee violation reports (VR1s) that resulted in a reduction in pay, loss of wages, and dismissal from work; unfavorable changes to work schedule and work assignments that resulted in unfair and oppressive workloads; denial of leave for over a year; denial of access to personnel file; low performance evaluation scores; and ultimately in termination.

(Doc. 65 at p. 11).

Plaintiffs fail to allege any direct evidence of discriminatory intent in support of their disparate treatment claim. Accordingly, the Court analyzes Plaintiffs' claim

---

[4] A shotgun pleading is characterized by factually unsupported claims and frequently fails to specify which defendant is responsible for each act alleged. *See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002); *Beckwith v. Bellsouth Telecommunications Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) ("The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'"). Thus, with a shotgun pleading "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). As a result, "[s]hotgun pleadings delay cases by wasting scarce judicial and parajudicial resources." *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1251 (11th Cir. 2013) (alterations omitted)).

under the *McDonnell-Douglas* framework. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

A prima facie case of disparate treatment requires a showing that the plaintiff: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) suffered some adverse employment action by the employer; and (4) was treated less favorably than other similarly situated employees outside the protected group. *McCoy*, 492 F.3d at 556. Defendants assert that they are entitled to summary judgment on Plaintiffs disparate treatment claim because (1) "[t]he actions of which Plaintiffs complain do not constitute adverse employment actions"; and (2) "Plaintiffs fail to point to any similarly situated persons outside of Mrs. Washington's protected class—African-American—who were treated differently in a similar situation." (Doc. 129-2 at pp. 6–7).

Here, the Court will *assume* that Plaintiffs have satisfied the first three prongs of their prima facie case: that is, Mrs. Washington is member of a protected group; she was qualified for her position; and she suffered adverse employment actions while employed at LSP. *McCoy*, 492 F.3d at 556. Plaintiffs' claim still fails, however, because in response to Defendants Motion for Summary Judgment, Plaintiffs have not set forth *specific facts* to establish that Mrs. Washington was treated less favorably than other similarly situated employees of different races.

*McCoy*, 492 F.3d at 556.[5] Instead, Plaintiffs merely direct the Court's attention to instances in the Complaint where they have *alleged* that valid comparators exist. (*See* Doc. 130-1 at pp. 2, 8–20). To repeat: when faced with a motion for summary judgment, a plaintiff's "burden is not satisfied . . . by only a scintilla of evidence," *much less* by "conclusory *allegations*" or "unsubstantiated *assertions*." *Little*, 37 F.3d at 1075 (emphasis added, quotation marks and citations omitted). Having failed to direct the Court's attention to *any evidence* showing that similarly situated employees were treated more favorably than Mrs. Washington, Plaintiffs have

---

[5] In determining whether "employees outside the protected group" are "similarly situated," and, thus, valid "comparator[s]," the U.S. Fifth Circuit Court of Appeals has provided considerable guidance:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009).

failed to establish a prima facie case of disparate treatment.[6] *See McCoy*, 492 F.3d at 556. Accordingly, this claim will be dismissed.

      *b. Retaliation*

Plaintiffs' Complaint also states a claim for retaliation in violation of Title VII. (Doc. 141 at ¶ 58). A plaintiff establishes a *prima facie* claim of retaliation by showing: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 557. Ultimately, "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2521 (2013).

Defendants assert that they are entitled to summary judgment on Plaintiffs' retaliation claim because (1) "[t]he acts [about] which Plaintiffs complain do not rise to the level of adverse employment actions," (Doc. 129-2 at pp. 17, 18–20), and (2) even assuming Mrs. Washington suffered an adverse employment action, any adverse action was too remote in time from Mrs. Washington's participation in a protected activity for a causal connection to be inferred, (*see id.* at p. 18).

Here the Court is satisfied—based on evidence supplied by *Defendants*—that during her employment, Mrs. Washington engaged in at least one activity protected

---

[6] As will be explained, *infra*, Plaintiffs' failure to identify *any* record evidence establishing their prima facie case is *not* limited to their disparate treatment claim. Indeed, Plaintiffs' opposition memorandum fails to draw the Court's attention to *any* record evidence whatsoever. (*See generally* Doc. 130). In the face of Defendants' Motion for Summary Judgment, this deficiency is fatal. *See Little*, 37 F.3d at 1075.

by Title VII. Specifically, on April 16, 2008 Mrs. Washington filed a grievance against her manager, Gwen Harden. (*See* Doc. 129-3 at ¶ 16 (Affidavit of Sharon Augustine)). Further, the Court will accept for the sake of argument that after filing her grievance, Mrs. Washington suffered an adverse employment action—specifically, she was cited for three employee violations, each of which resulted in one-day's lost wages. (*See id.* ¶¶ 2–6, 16). *But see Martinez v. Connecticut, State Library*, 817 F. Supp. 2d 28, 41 (D. Conn. 2011) (determining that employee did not suffer an adverse employment action when she was suspended without pay for one day). Still, Plaintiffs' retaliation claim fails because the uncontroverted evidence shows that Mrs. Washington was not cited for her first employee violation until December 15, 2008. Absent "other significant evidence of pretext," the passage of *eight months* between Mrs. Washington's grievance and her first citation is fatal to her retaliation claim. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999); *see Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (unpublished but persuasive) (initiation of disciplinary proceedings against federal employee *four months* after he filed a discrimination complaint was insufficient, without more, to establish prima facie case of retaliation in violation of Title VII); *Myers v. Crestone Int'l, LLC*, 121 F. App'x 25, 28 (5th Cir. 2005) (unpublished but persuasive) (adverse employment actions experienced by employee *three months* after she filed a discrimination complaint were insufficient, without more, to establish prima facie case of retaliation in violation of Title VII).

In sum, absent additional evidence of pretext, Mrs. Washington's grievance is too remote in time from her citations to establish actionable retaliation under Title VII. And because Plaintiffs have failed to draw the Court's attention to evidence establishing that Mrs. Washington engaged in additional protected activities and/or suffered additional adverse employment actions, (*see generally* Doc. 129-2), Plaintiffs' Title VII retaliation claim must also be dismissed.

  *c. Hostile Work Environment*

Plaintiffs' Complaint also states a Title VII hostile work environment claim. (Doc. 1 at ¶¶ 11, 30, 84, 90, 95). To establish a hostile working environment, a plaintiff must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

Yet again, Plaintiffs have produced no evidence whatsoever to substantiate their claim that Mrs. Washington was subjected to unwelcome harassment on the basis of her race. Thus, the Court is left with only the evidence provided by Defendants, which indicates that during the course of her ten years at LSP, Mrs. Washington: (1) was cited for three employee violations; (2) received low performance scores; and (3) was denied access to her personnel file. (*See* Doc. 129-3

at ¶¶ 1–6, 8–15). However, even if the Court assumes that these actions constitute "unwelcome harassment," there is nothing in the record to connect these actions to Mrs. Washington's race. Indeed, Defendants' evidence indicates the opposite—specifically, that even in *these* instances Mrs. Washington was treated commensurately with other employees of different races. (*See id.*).

Accordingly, because there is no evidence to show that Mrs. Washington suffered harassment on the basis of her race, Defendants are entitled to summary judgment on this claim as well.

### d. *Discriminatory Discharge*

Finally, Plaintiffs' Complaint asserts a claim for discriminatory discharge in violation of Title VII. (*See* Doc. 141 at ¶¶ 38, 74). However, Plaintiffs' concede in their opposition memorandum that Mrs. Washington was *not* terminated from her position at LSP; instead she "retire[d]" to avoid "continue[d] . . . physical[] or financial[] [suffering]." (*See* Doc. 130-1 at p. 4). Accordingly, the Court construes Plaintiffs' claim for discriminatory discharge as a claim for *constructive* discharge.

To make out a prima facie case of constructive discharge, a plaintiff must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Jurgens v. E.E.O.C.*, 903 F.2d 386, 390 (5th Cir. 1990) (quotation marks omitted). "Whether a reasonable employee would feel compelled to resign depends on the facts of each case." *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir.

1994). When conducting this inquiry, "the following factors [are] relevant, singly or in combination:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Id.*; *see also White v. Rush Health Sys., Inc.*, 85 F.3d 626 (5th Cir. 1996) (instructing that "the usual indicia of a constructive discharge" include "demotion, performance of inconsistent or more onerous duties, and reduced pay").

Here again, Plaintiffs have failed to cite any evidence to establish their constructive discharge claim and the Court is left with the evidence provided by Defendants. To repeat, this evidence shows that Mrs. Washington was cited for employee violations, received low performance scores, and was denied access to her personnel file, but that she was not treated differently than her colleagues. (*See* Doc. 129-3 at ¶¶ 1–6, 8–15). Further, the evidence shows that "[a]t no point during the course of her employment with LSP was Mrs. Washington fired, placed on extended involuntary leave, discharged, demoted, or subjected to permanent reduction of salary." (*Id.* at ¶ 7).

In sum, the Court determines that there is no evidence to establish *any* of the usual indicia of a constructive discharge. *See Barrow*, 10 F.3d at 297. Accordingly, Plaintiffs have failed to show a genuine dispute as to whether a "reasonable person

12

in [Mrs. Washington's] shoes would have felt compelled to resign." *See Jurgens*, 903 F.2d at 390; Fed. R. Civ. P. 56(a). Thus, this claim will also be dismissed.

## VI. CONCLUSION

In response to Defendants' Motion for Summary Judgment, Plaintiffs' fail to identify any evidence *whatsoever* to support their claims. Accordingly,

**IT IS ORDERED** that Defendants' **MOTION FOR SUMMARY JUDGMENT (Doc. 129) is GRANTED.** Plaintiffs' claims against Defendants' are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants' request that costs be taxed against Plaintiffs (Doc. 129 at p. 1) is **DENIED WITHOUT PREJUDICE.** Should Defendants' choose, they shall file a schedule of reasonable costs for which they seek reimbursement no later than 30 days from the date of entry of judgment in this matter, in accordance with this Court's Local Rules. *See* M.D. La. LR54.3. Plaintiffs shall then have an additional 7 days to submit "[s]pecific objections" to any costs claimed by Defendants. *Id.* at LR54.4.

**IT IS FURTHER ORDERED** that Plaintiffs' **MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 130) is DENIED.**

**IT IS FURTHER ORDERED** that **PLAINTIFFS' MOTION REQUESTING PERMISSION TO FILE A REPLY TO DEFENDANTS'**

OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 134) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' MOTION TO FILE REPLY TO OPPOSITION TO MOTION TO FILE REPLY TO OPPOSITION TO MOTION TO STRIKE MOTION FOR SUMMARY JUDGMENT (Doc. 137) is DENIED.

IT IS FURTHER ORDERED that judgment be entered in favor of Defendants and against Plaintiffs.

Baton Rouge, Louisiana, this 29nd day of September, 2014.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA